DAVID L. MAINES v. CITY OF GREENSBORO, NORTH CAROLINA

No. 44

(Filed 6 May 1980)

1. **Municipal Corporations §§ 8.1, 11— ordinance requiring city employees to reside in city— standing to challenge constitutionality**

    Plaintiff had standing to litigate the issue of the constitutionality of a city ordinance requiring all permanent employees to be residents of the city but permitting employees living outside the city when the ordinance was adopted to continue to do so where plaintiff was discharged as a fireman for violation of the ordinance, and he alleges that the ordinance is void on its face and that it was applied with an uneven hand, since plaintiff has suffered a direct injury under the very terms of the ordinance which he seeks to challenge.

2. **Municipal Corporations § 9— ordinance requiring city employees to reside in city—exception for those residing outside city on ordinance date—no unconstitutional delegation of power to city manager**

    A city ordinance requiring all permanent city employees to be residents of the city, providing that all employees living inside the city limits on the date of the ordinance must continue to reside within the city limits at all times, permitting employees living outside the city on that date to continue to do so, and directing the city manager to implement the residency rules and prescribe other reasonable standards which are "consistent with the standards and criteria" specifically set out in the ordinance does not unconstitutionally vest unlimited discretion in the city manager to enforce the ordinance.

3. **Municipal Corporations § 11— ordinance requiring city employees to reside in city—exception for those residing outside city on ordinance date—no unconstitutional application of ordinance**

    A city ordinance requiring all permanent city employees to be residents of the city, requiring all employees living inside the city to continue to live inside the city, and permitting employees living outside the city on the date of the ordinance to continue to do so was not unconstitutionally applied to a city fireman who was discharged for moving his residence outside the city because the city manager permitted employees who had committed themselves to buying or leasing a residence outside the city prior to the date of the ordinance to

move outside the city after the date of the ordinance, where there was no evidence that plaintiff had entered into any type of commitment to construct or rent a residence outside the city prior to the date of the ordinance, and plaintiff's evidence showed only that he was denied permission two months after the date of the ordinance to change his address form to reflect what he contended was his true address outside the city on the date of the ordinance, since the denial of plaintiff's request to change his address form did not amount to enforcing the ordinance against him in an unequal manner compared with others "similarly situated."

**4. Administrative Law § 6; Municipal Corporations § 11.1— administrative determination — review by certiorari — effect of independent action**

The proper procedure to review a determination by an administrative agency where none is provided by statute is to petition for a writ of certiorari in the superior court, and where plaintiff fireman did not seek judicial review of an administrative determination that he moved his residence outside the city of his employment but filed an original action in the superior court, the appellate court is bound by the administrative determination that plaintiff moved his residence outside the city limits.

**5. Municipal Corporations § 11— discharge of city fireman — notice and hearing**

An employment contract is generally not a sufficient proprietary interest to require full-scale constitutional protection in the form of a pretermination hearing. Even if plaintiff city fireman's interest in his employment was sufficient to invoke constitutional requirements of notice and hearing before his discharge for moving his residence outside the city limits, plaintiff received adequate notice and hearing to comport with due process where plaintiff was informed by letter on 27 May 1977 that a hearing would be held on 31 May 1977 concerning his alleged violation of a city ordinance requiring him to remain a resident of the city and that he was entitled to have someone accompany or represent him at the hearing; a departmental hearing was held before a board consisting of members of the fire department, and plaintiff was permitted to put on evidence; plaintiff was subsequently notified of the decision to terminate his employment and the reasons therefor; and plaintiff appealed this decision to the city manager and was given a hearing before the city manager with the opportunity to offer additional facts in support of his case.

APPEAL by plaintiff from the decision of the Court of Appeals reported in 43 N.C. App. 553, 259 S.E. 2d 334, affirming summary judgment entered by *Albright, J.,* 14 August 1978 Session of GUILFORD Superior Court.

Plaintiff filed this action on 8 August 1977 seeking a declaration that he had been illegally discharged from his employment with defendant's fire department. He asked for reinstatement with restoration of back pay and benefits, plus costs.

The pleadings, together with affidavits filed, tended to show the following:

Plaintiff was employed by defendant as a fireman on 16 September 1974 and continued to be employed until his discharge on 2 June 1977. On 2 September 1976, the City of Greensboro adopted an ordinance which required all employees residing in the City to continue to reside in the City limits. The ordinance provided that employees then living outside the City could continue to do so. At this time, fire department records showed plaintiff's address as 606 Fifth Avenue, Greensboro, North Carolina. Shortly after the adoption of the ordinance, City employees were required to sign a form stating their current address and acknowledging the terms of the ordinance. Plaintiff alleges that he requested an "out of City" form but was given an "in City" form instead. He maintains that his residence was, at all times relevant to this action, in Surry County and that he gave his father's address in Greensboro to defendant merely as a matter of convenience. In signing the "in City" form, plaintiff noted on it that he also resided in Surry County.

In November 1976, plaintiff requested that he be permitted to change his address form to reflect what he contended was his true address in Surry County. He was informed that the ordinance prohibited such a change, and in early December received a letter from the Deputy Chief of the Fire Department denying his request.

On 29 December 1976, plaintiff purchased a mobile home at 4100 North O'Henry Boulevard, outside of the City limits of Greensboro. In late May 1977, one of his superiors learned of plaintiff's new address. Subsequently, the Assistant City Manager and the Director of Public Safety met with plaintiff, at which time he again contended that he had never been a resident of the City of Greensboro but only used his father's residence there as temporary quarters.

Plaintiff received notice of and attended a departmental hearing on 31 May 1977. On 2 June 1977, plaintiff received a letter from First Deputy Chief R. L. Powell, Jr., informing him that his employment with the Fire Department was terminated due to his moving his residence outside the City in violation of the residency

ordinance. On appeal to the City Manager, the decision to terminate was upheld.

After the institution of this action, defendant moved for summary judgment. The trial court granted defendant's motion on 22 August 1978. Plaintiff appealed and the Court of Appeals, in an opinion by Judge Robert M. Martin, unanimously affirmed. Plaintiff appealed to this Court pursuant to G.S. 7A-30(1).

*Dees, Johnson, Tart, Giles & Tedder by J. Sam Johnson, Jr., for plaintiff appellant.*

*Miles & Daisy, by James W. Miles, Jr., for defendant appellee.*

BRANCH, Chief Justice.

The primary questions presented for review center on the following Greensboro City Ordinance:

Section 1. That all permanent city employees employed on and after 2 September 1976 shall be required to be permanent residents of the City of Greensboro; provided, that any such employees shall be given ninety (90) days to move their residence inside the city limits of Greensboro from the date of employment.

Section 2. All existing permanent employees employed before 2 September 1976 who are presently living outside the city limits of the City of Greensboro may continue to reside outside the city limits until such time as any such permanent employees either move their residence inside the city limits or their residence is annexed within the city limits. Thereafter, such employees may not move their residence outside the city limits of the City of Greensboro.

Section 3. As of 2 September 1976, all permanent city employees living inside the city limits of the City of Greensboro must continue to reside within the city limits at all times.

Section 4. The City Manager is hereby directed to implement the above mentioned residency requirements within the personnel rules and regulations of the City of Greensboro. In addition, the City Manager may prescribe other reasonable

standards with regard to residency requirements as he may determine to be in the best interest of the City of Greensboro which requirements shall be supplemental to and consistent with the standards and criteria set out above.

Plaintiff first contends that the ordinance is unconstitutional on its face in that it delegates excessive authority to the City Manager and provides no guidelines for the exercise of his discretion. In the alternative, plaintiff argues that the ordinance is unconstitutional as applied since the evidence indicates that the City Manager allowed certain Greensboro residents to move outside the City limits after the ordinance was adopted.

Defendant contends, on the other hand, that the terms of the ordinance do not vest excessive discretion in the City Manager since he is only authorized to prescribe reasonable standards which are "consistent with the standards and criteria" specifically enumerated in the body of the ordinance. Defendant further argues that the ordinance is not unconstitutional as applied. Defendant maintains that the City Manager granted exceptions to the City residents who had begun construction on homes outside the City or otherwise changed their positions prior to the adoption of the ordinance. Such action was necessary, defendant argues, to prevent undue financial hardship. Defendant submits that the City Manager's actions were entirely reasonable and that, in effect, he merely treated certain employees who had "begun to move" their residences prior to 2 September 1976 as if they had already moved outside the City.

[1] We note at the outset that the Court of Appeals held that plaintiff lacked standing to challenge the constitutionality of the ordinance, since he "was discharged for a violation of Section 3 of the ordinance, and all exceptions granted have been in accord with Section 2 of the ordinance." We disagree. The evidence is clear, and defendant does not deny, that certain employees were permitted to move out of the City after September 1976 due to commitments made prior to the adoption of the ordinance. The exceptions granted were thus exceptions to the requirements of Section 3, and that is the section under which plaintiff was discharged.

Standing to challenge the constitutionality of a legislative enactment exists where the litigant has suffered, or is likely to

suffer, a direct injury as a result of the law's enforcement. *Turner v. City of Reidsville*, 224 N.C. 42, 29 S.E. 2d 211 (1944). Plaintiff was discharged from employment for violation of the ordinance. He alleges that the ordinance under which he was discharged is void on its face, or alternatively, that it was applied with an uneven hand since he was discharged for the same course of conduct which others were permitted to follow without penalty. In our view, plaintiff has suffered a direct injury under the very terms of the ordinance which he now seeks to challenge. We therefore hold that plaintiff has standing to litigate the issue of the constitutionality of the ordinance.

Turning now to the merits of plaintiff's constitutional challenges, we recognize the validity of the general rule that an ordinance on its face must be fair and impartial and must not permit unwarranted discrimination. *Clinton v. Standard Oil Co.*, 193 N.C. 432, 137 S.E. 183 (1927); 5 E. McQuillin *Municipal Corporations* § 18.09 (3d Ed. 1969). Furthermore, it is well settled that an ordinance which vests unlimited or unregulated discretion in a municipal officer is void. *Bizzell v. Board of Aldermen*, 192 N.C. 348, 135 S.E. 50 (1926).

[2] Plaintiff alleges that Section 4 of the challenged portion violates the general rule by vesting unlimited discretion in the City Manager to enforce the ordinance. Section 4 of the challenged ordinance directs the City Manager to implement the rules concerning residency and, in addition, to "prescribe other reasonable standards with regard to residency requirements as he may determine to be in the best interest of the City of Greensboro *which requirements shall be supplemental to and consistent with the standards and criteria set out above.*" [Emphasis added.] The plain language of the ordinance directs that any standard promulgated by the City Manager must be consistent with the standards set out in the ordinance. Section 3 of the ordinance makes it clear that employees living inside the City limits "*must* continue to reside within the City at all times." [Emphasis added.] So plain a directive leaves little, if any, room for the City Manager, in his discretion, to prescribe other supplemental standards *consistent with* the standards of Section 3. By no stretch of the imagination could we say that the City Manager was vested with unlimited or unbridled discretion in administrating the ordinance. We therefore hold that, on its face and by its plain

terms, Section 4 of the ordinance does not vest unfettered discretion in the City Manager.

[3]   Plaintiff contends alternatively that the City Manager has made several exceptions to the requirements of Section 3 and that enforcing the ordinance only as to him violates the constitutional guarantee of equal protection of the laws. Plaintiff thus submits that the ordinance is unconstitutional as applied.

It is well established that legislation may be fair on its face and yet be void as a violation of equal protection because it is applied unequally to persons similarly situated. *Yick Wo v. Hopkins*, 118 U.S. 356, 30 L.Ed. 220, 6 S.Ct. 1064 (1886). "An actual discrimination arising from the method of administering a law is as potent in creating a denial of equality of rights as a discrimination made by law." 16A Am. Jur. 2d "Constitutional Law" § 802 (1979); *see Norris v. Alabama*, 294 U.S. 587, 79 L.Ed. 1074, 55 S.Ct. 579 (1935).

On the other hand, actions of public officials are presumed to be regular and done in good faith. *Philbrick v. Young*, 255 N.C. 737, 122 S.E. 2d 725 (1961), and the burden is on the challenger to show that the actions as to him were unequal when compared to persons *similarly situated. See Snowden v. Hughes*, 321 U.S. 1, 88 L.Ed. 497, 64 S.Ct. 397 (1944), *rehearing denied*, 321 U.S. 804, 88 L.Ed. 1090, 64 S.Ct. 778 (1944). The initial question then is whether plaintiff has met his burden of showing that he received treatment different from others similarly situated. 16A Am. Jur. 2d, *supra* § 803.

In the instant case, it is uncontroverted that the City Manager permitted certain residents of the City to move outside the City after the effective date of the ordinance. It is equally uncontroverted that those persons granted exceptions had, in some way, committed themselves, prior to that date, to the buying or leasing of a residence outside the City, and that the City Manager granted exceptions to relieve those persons of the undue financial hardship which would result from strict compliance with the ordinance. The Manager thus elected to treat those particular employees as if they had already completed the move outside the City prior to the effective date of the ordinance.

On the other hand, there is no indication in the record that plaintiff had entered into any type of commitment to construct or rent a residence outside the City prior to 2 September 1976, the date of adoption of the ordinance. All of the evidence indicates that two months following its adoption, plaintiff merely requested that he be allowed to change his address form so as to reflect an address different from that listed as of 2 September 1976. Nothing in the record indicates that any person was in fact granted an exemption who did not already have a commitment to buy or lease a residence outside the City. In our view, the denial of plaintiff's request to change his address form did not amount to enforcing the ordinance against him in an unequal manner compared with others *similarly situated.* We therefore hold that the ordinance is not a denial of equal protection as applied to plaintiff.

Plaintiff finally contends that his right to due process of law was denied because the conclusion of the hearing board that he violated the ordinance is not supported by competent evidence in the record. He submits that all of the competent evidence supports his contention that he resided in Surry County at all times relevant to this matter, and that the conclusion reached by the hearing board and the City Manager is not binding on this Court. We disagree.

[4] The proper procedure to review a determination by an administrative agency where none is provided by statute is to petition for a writ of *certiorari* to the Superior Court. *Bratcher v. Winters,* 269 N.C. 636, 153 S.E. 2d 375 (1967). Plaintiff has not sought judicial review of the administrative determination that he moved his residence outside the city limits but rather filed an original action in Guilford County Superior Court. The general rule is that an essential issue of fact which has been litigated and determined by an administrative decision is conclusive between the parties in a subsequent action. 2 Am. Jur. 2d "Administrative Law" § 502 (1962). We are therefore bound by the determination that plaintiff moved outside the City limits of Greensboro.

Furthermore, even if we were not bound by that determination, the scope of our review would be limited to the question of whether any competent evidence in the record supports the finding. *In re Burris,* 261 N.C. 450, 135 S.E. 2d 27 (1964). In this case, there is evidence indicating that plaintiff gave the Greensboro ad-

dress on at least two occasions before and after 2 September 1976 and that he spent considerable time at that address. While plaintiff submitted numerous exhibits indicating that he had on other occasions given a Surry County address, we are of the opinion that there is competent evidence in the record tending to show that plaintiff resided in Greensboro to support the finding that he moved outside the City limits in violation of the ordinance.

[5] Plaintiff also argues that he was denied due process because he was not afforded an adequate hearing. A review of the proceedings in this case indicates otherwise. Plaintiff was informed by letter dated 27 May 1977 that a hearing would be held on 31 May 1977 concerning his alleged violation of the ordinance, and that he was entitled to have someone accompany or represent him at the hearing. A departmental hearing was held before a board consisting of various members of the fire department, and plaintiff was permitted to put on evidence. Plaintiff was notified subsequently of the decision to terminate his employment and was given the reasons for the decision. He then appealed the decision to the City Manager and was permitted a hearing before the Manager with the opportunity to offer any additional facts in support of his case.

At the threshold of any procedural due process claim is the question of whether the complainant has a liberty or property interest, determinable with reference to state law, that is protectable under the due process guaranty. *Bishop v. Wood*, 426 U.S. 341, 48 L.Ed. 2d 684, 96 S.Ct. 2074 (1976); *Presnell v. Pell*, 298 N.C. 715, 260 S.E. 2d 611 (1979). We have consistently held that, "[n]othing else appearing, an employment contract in North Carolina is terminable at the will of either party," *Presnell v. Pell, supra*, and that such a contract is not a sufficient proprietary interest to require full-scale constitutional protection in the form of a pretermination hearing. *Id.*

Furthermore, even if plaintiff's interest in his employment were sufficient to invoke constitutional requirements of prior notice and hearing, the evidence here clearly indicates that he received prior notice and hearing. We therefore hold that plaintiff was not denied the right to due process of law under the four-teenth amendment to the United States Constitution.

The decision of the Court of Appeals affirming the entry of summary judgment in favor of defendant is

Modified and affirmed.